UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

MARK ANTHONY HENDERSON,          :
    Plaintiff,          :
              :
    v.          :     Case No. 3:20-cv-560 (SRU)
              :
WARDEN AMONDA HANNAH, ET AL.,          :
    Defendants.          :

## INITIAL REVIEW ORDER AND ORDER ON MOTIONS

Mark Anthony Henderson ("Henderson") brings claims under 42 U.S.C. § 1983 against

various officials associated with the Connecticut Department of Corrections ("DOC")  including:

Warden Amonda Hannah,[1] Dr. Gerald A. Valletta, Department of Corrections Health Services

Director Kathleen Maurer, Department of Corrections Health Services Chief Medical Officer

Byron Kennedy, Department of Corrections Health Services Chief Operating Officer Robert

Richeson, Health Services Review Coordinator Cynthia Nadeau, and Nursing Supervisor

Michael Desena. Henderson additionally attaches to his complaint thirty-four exhibits. *See* Doc.

Nos. 12-16.  In connection with those exhibits, Henderson has filed four motions requesting

confirmation that the exhibits have been received and are legible. *See* Doc. Nos. 17, 18, 19, 21.

For the following reasons, Henderson's motions for exhibit verification are **granted** and

the complaint is **dismissed.**

### 1.      Motions for Exhibit Verification [Doc. Nos. 17, 18, 19, 21]

Henderson has filed four motions requesting confirmation that the exhibits submitted

along with his complaint were received and are legible. *See* Doc. No. 17, 18, 19, 21. A review of

---

[1] The titles referenced in this order are the titles held by the defendants at the time Henderson filed his complaint. I note that although Henderson refers to a Warden Hanna, the 2019 warden of Garner Correctional Institution was "Amonda Hannah." Accordingly, I assume that Henderson is referring to Warden Amonda Hannah in the complaint.

the exhibits submitted by Henderson (Exhibits 1, 2a, 3, 4, 5, 6, 7, 8a, 8b, 8c, 8d, 8e, 9a, 10a, 10b, 10c, 10d, 10e, 11a, 11b, 12, 13a, 13b, 13c, 14, 15, 16, 17, 18, 19, 20a, 20b, 20c, 21) reflects that all of the documents are legible and will be considered in my initial review of the complaint.

2.        **Complaint [Doc. No. 1]**

Henderson brings claims under the Eighth Amendment arising out of his conditions of confinement and access to adequate medical care while incarcerated at Garner Correctional Institution ("Garner") between October 2019 and January 2020. He generally contends that he was denied access to a desk and chair in his cell, forcing him to sit in extremely uncomfortable positions that aggravated his underlying medical conditions, in order to write. When he sought treatment for those worsening conditions, he was denied access to timely and adequate medical care. He additionally alleges that various DOC officials failed to process his medical and administrative requests, further delaying his access to medical care, in violation of both the Eighth Amendment and the provisions of the Connecticut Administrative Directives.[2]

I.        **Standard of Review**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  That standard of review "applies to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (citation omitted).

---

[2] The Connecticut Administrative Directives are "written guidelines, promulgated pursuant to Connecticut General Statutes § 18-81, establishing the parameters of operation for Connecticut correctional facilities." *Nicholson v. Murphy*, 2003 U.S. Dist. LEXIS 22165, at *18 n.2 (D. Conn. Sep. 19, 2003).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.    Factual Background

Henderson, who is currently incarcerated at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, is serving a twenty-year sentence that was imposed in July 2013. *See* STATE OF CONNECTICUT JUDICIAL BRANCH, Criminal/Motor Vehicle Convictions, https://www.jud.ct.gov/jud2.htm. Henderson suffers from numerous painful and chronic conditions, including sciatica due to osteoarthritis of his lumbar spine and left shoulder joint, medial compartment osteoarthritis of the right knee, and a torn rotator cuff in his right shoulder. Compl. Doc. No. 1 at 7 ¶ 4; at 9 ¶ 8. At some point prior to June 30, 2019 Henderson was prescribed a regimen of 1200 milligrams of Gabapentin twice a day to treat the pain caused by his torn rotator cuff. *Id.* at 9 ¶ 8; *see also* Pl.'s Ex. 6 Doc. No. 16.

On October 1, 2019, Henderson was transferred to Garner Correctional Institution ("Garner") to begin phase two and three of the Administrative Segregation Special Management Phase Program. *Id.* at 6 ¶ 1. His cell (F-106) was equipped with a bed, sink, toilet and a single chair; it did not contain a desk. *Id.* Because the cell did not contain a desk, Henderson had to use

the bed as a desk, forcing him to write while bending over the bed in a way that caused severe back pain. *Id.* at ¶ 3. On October 23, 2019, Henderson wrote to the Unit Housing Manager (Captain Hurdle) requesting to be moved to a cell that contained a desk. *Id.* at ¶ 2. Henderson was subsequently moved to a different cell (F-210) which was equipped with a bed, sink and toilet but no chair or desk. *Id.* at 7 ¶ 3. Henderson therefore had to write on his hands and knees on the cell floor, which aggravated his sciatica pain. *Id.* at ¶ 3-4.

Henderson never received an adequate response from Captain Hurdle regarding his request to be moved to a cell containing a desk. *Id.* at 8 ¶ 5. He subsequently filed a grievance alleging deliberate indifference to his need for adequate cell furnishings. *Id.*

Because he was not provided a desk on which to write, Henderson's underlying chronic medical conditions worsened significantly. *Id.* at 8 ¶ 6. Accordingly, Henderson submitted a request to be seen by a medical provider to discuss the possibility of increasing his daily dosage of Gabapentin. *Id.* at ¶ 7; *see also* Pl.'s Ex. 5 Doc. No. 16. In response to that request, Henderson appears to have been seen by a Registered Nurse ("RN") on October 16 who sent a request to Dr. Valletta reporting the request for an increase in dosage. Pl.'s Ex. 8(e) Doc. No. 16. Despite that request, on October 17, 2019, Dr. Valletta reduced Henderson's Gabapentin prescription from 1200 milligrams twice daily to 300 milligrams three times per day. *Id.* at ¶ 9; *see also* Pl.'s Ex. 8(e) Doc. No. 16. Dr. Valletta was not at Garner that day and therefore did not examine Henderson prior to making the change; he was instead working at Manson Youth Institution. *Id.* at 11 ¶ 12; *see also* Pl.'s Ex. 8(e) Doc. No. 16.

Henderson contends that he was not examined in person because there are not enough physicians assigned to care for inmates at Garner; one physician is assigned to care for between

540 and 700 inmates. *Id.* at 11 ¶ 13. Moreover, Dr. Valletta is additionally only assigned to provide medical treatment to inmates at Garner three days a week. *Id.*

On October 18 and 21 and on November 5 and 14, 2019, Henderson sent requests to Director Maurer, Officer Kennedy, and Officer Richeson—all of whom are responsible for ensuring that inmates in DOC facilities are provided with adequate medical care—informing them of the shortage of physicians assigned to Garner and explaining that because of the shortage, he had not been seen by a doctor prior to his medication being reduced. *Id.* at 12 ¶¶ 16-17; *see also* Pl.'s Exs. 10(a)-(d) Doc. No. 16, Doc. No. 14-2. Henderson explained in those requests that because of the reduction in dosage, he was experiencing pain. *Id.*

On November 15, 2019, Henderson received a reply to his October 18, 2019 request addressed to Director Maurer. *Id.* at 13 ¶ 18. The reply, written by Regional Chief Operating Officer Green, noted that Henderson's medication had been adjusted on October 17, 2019 and that he had been triaged by a nurse on October 18, 2019. *Id.*; *see also* Pl.'s Ex. 10 (a) Doc. No. 16. Henderson was not satisfied with that reply, and filed grievances regarding Dr. Valletta, Director Maurer, Officer Kennedy and Officer Richeson on October 19, November 5, November 21 and December 4, 2019. *Id.* at 13 ¶ 18.

On January 3, 2020, Henderson filed an appeal contesting a response he had received to the grievance regarding Dr. Valletta's choice to reduce his medication without examination. *Id.* at ¶ 19; *see also* Pl.'s Ex. 10e Doc. No. 14-2. On January 17, 2020, Officer Green responded to the grievance appeal, stating that Garner was adequately staffed with medical providers and noting "medical staff makes determination regarding medication based on examination and /medical history." *Id.* On January 24, 2020, Henderson filed an appeal of that disposition with

the Director of Health Services. *Id.* at 14 ¶ 19. On January 31, 2020, Director Maurer denied the appeal. *Id.*

Henderson additionally alleges that his sick call requests were not timely collected from the designated boxes. *Id.* at 14 ¶ 20. On October 18, 2019, Henderson wrote to Nursing Supervisor Desena to report that his requests to be seen by a medical provider were not being collected and that, as a result, he was not receiving timely or adequate medical treatment. *Id.; see also* Pl.'s Ex. 11a Doc. No. 14-2. He received no reply. *Id.* at 14 ¶ 21. Henderson wrote again to Supervisor Desena on October 22, 2019 to report that his health service review forms were also not being collected. *Id.* at 14 ¶ 22*; see also* Pl.'s Ex. 11(b) Doc. No. 14-2. In his request, he noted that Coordinator Nadeau was responsible for ensuring the forms were properly collected and logged under Administrative Directive 8.9(8)(C). *Id.* Henderson also filed a second, identical request on October 22. *Id.* at ¶ 24; *see also* Pl.'s Ex. 13(a) Doc. No. 14-1. On October 25, 2019, Henderson received his first October 22 complaint back from Supervisor Desena with a notation on the bottom thanking him for the information. *Id.* at ¶ 22*; see also* Pl.'s Ex. 11(b) Doc. No. 14-2.

On November 21, 2019 Henderson filed a request for health services review regarding the failure of Coordinator Nadeau to process his requests. *Id.* at 15 ¶ 24. On that same date, Henderson also filed a request for health services review regarding the failure of Supervisor Desena to correct or resolve the failure of Coordinator Nadeau to process requests for health services review. *Id.* at 16 ¶ 27.

On December 2, 2019 Henderson received a response to his second October 22, 2019 request and the November 21, 2019 request for health services review regarding Coordinator Nadeau, both with a notation from Supervisor Desena that the request had been adjudicated on

October 24, 2019. *See id.* at 15 ¶ 25; Pl.'s Ex. 13(a)-(b) Doc. No. 14-1. Henderson found the

response to the November 21 request regarding Coordinator Nadeau confusing and filed an

appeal on December 12, 2019. *Id.* at 15 ¶ 26; *see also* Pl.'s Ex. 13(c) Doc. No. 14-1. He received

no response. *Id.* at 15 ¶ 26; *see also* Pl.'s Exs. 13c. He additionally did not receive a reply to the

November 21 grievance addressing Supervisor Desena's failure to correct the issue with

Coordinator Nadeau. *Id.* at 16 ¶ 28. He filed an appeal of that grievance, to which he also

received no response. *Id.*

On January 27, 2020, he received a notice of extension from Coordinator Nadeau

indicating that more time was needed to investigate the issue with the processing of health

service reviews. *Id.* at 18 ¶¶ 31-32*; see also* Pl.'s Ex. 20A. Henderson additionally notes that he

has filed grievances and appeals of those grievances regarding defendants: Dr. Valletta, Director

Maurer, Officer Kennedy, Officer Richeson, Coordinator Naudea, Supervisor Desena and

Warden Hannah. *Id.* at 17 ¶ 30; *see also* Pl.'s Exs. 14-19, 21 Doc. No. 14, 14-1, 14-2, 14-3.

## III.    Discussion

Henderson contends that Warden Hannah was deliberately indifferent to unconstitutional

conditions of confinement in violation of the Eighth Amendment by failing to ensure that he had

access to a chair and desk while confined in cell F-106 for 23 days and cell F-210 for seven days.

Compl. Doc. No. 1 at ¶ 34. He additionally alleges that Dr. Valletta, Coordinator Nadeau,

Supervisor Desena, Director Maurer, Officer Richeson and Officer Kennedy were deliberately

indifferent to his serious medical needs in violation of the Eighth Amendment because: Dr.

Valletta reduced his prescription for pain medication without first examining or diagnosing him;

Coordinator Nadeau and Supervisor Desena failed to ensure that his sick-call requests, health

services reviews, grievances and appeals were collected and processed for review; and Director

Maurer, Officer Richeson and Officer Kennedy failed to ensure that there were enough medical providers at Garner to provide timely, adequate medical care to inmates.

Henderson seeks injunctive relief in the form of continuing medical treatment, pain management and physical therapy, an order directing the DOC to appoint additional physicians to Garner, an order directing Warden Hannah to place chairs and desks in cells 201-220 and money damages.

### A.    Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") requires that, prior to bringing a civil suit challenging prison conditions, a plaintiff must "exhaust such administrative remedies as are available." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (*quoting* 42 U.S.C. § 1997e (a)). Because Henderson is incarcerated in a Connecticut correctional facility, the administrative remedies available to him for resolving administrative or healthcare related issues are provided by the Connecticut Administrative Directives. Henderson alleges that he has filed appeals and grievances of those appeals with regard to each defendant. He additionally attaches as exhibits to the complaint numerous grievances filed against each defendant addressing the issues raised in the complaint, as well as appeals of those grievances. For purposes of initial review, those allegations and copies of requests and reviews are sufficient to establish that Henderson has exhausted the administrative remedies available to him prior to filing suit.

### B.    Eleventh Amendment

Henderson does not indicate whether he sues the defendants in their individual or official capacities. To the extent that Henderson seeks money damages from defendants sued in an official capacity, that relief is barred under the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("absent waiver by the State or valid congressional override, the

Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when state officials are sued for damages in their official capacity.") (citation omitted). However, the Eleventh Amendment does not bar suits for money damages against state officials acting in their individual capacities, even if the alleged wrongdoing occurred in the course of official duties. *Hafer v. Melo*, 502 U.S. 21, 31 (1991) (state officials are not "absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."). Accordingly, Henderson may seek money damages for violations of his constitutional rights under section 1983 against defendants sued in an individual capacity.

Under the doctrine set forth in *Ex Parte Young*, state officers may additionally be sued in their official capacities so long as a plaintiff seeks prospective injunctive relief for violations of constitutional rights or federal law. *Ex Parte Young*, 209 U.S. 123 (1908); see also *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002). However, in the Second Circuit, "an inmate's transfer from a prison facility generally moots claims for...injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). In order to overcome that jurisdictional bar, a plaintiff must establish that the challenged actions are "capable of repetition, yet evading review. This exception will be applied...if (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Pugh v. Goord*, 571 F. Supp. 2d 477, 488 (S.D.N.Y. 2008) (internal citations omitted).

The allegations in the complaint in the case at bar relate to conditions of confinement that Henderson was subjected to while incarcerated at Garner. Henderson has since been transferred to Corrigan-Radgowski Correctional Center. *See* Change of Address Doc. No. 11. Henderson has

alleged no facts to suggest that "the same conditions that underlie the…litigation are present at the new facility" or that there is a "reasonable expectation that [he] will be subject to the same action again." *Pugh*, 571 F. Supp. 2d at 489. Accordingly, the requests seeking injunctive relief from officials at Garner are dismissed as moot. *See* 28 U.S.C. § 1915A(b)(1).

**C.      Eighth Amendment**

1.      Conditions of Confinement

Henderson contends that the lack of desks and chairs in the cells in Housing Unit F rose to the level of an unconstitutional condition of confinement. The Eighth Amendment, which forbids cruel and unusual punishment, has been interpreted to prohibit conditions in state prisons that subject incarcerated individuals to the "wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order to constitute an Eighth Amendment violation, however, a condition must be "sufficiently serious" such that it results in a deprivation of "the minimal civilized measure of life's necessities." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). Even where a condition meets that high bar, a plaintiff seeking to hold prison officials liable under the Eighth Amendment must additionally allege that in subjecting inmates to the particular condition, "the defendant official acted with a sufficiently culpable state of mind….such as deliberate indifference to inmate health or safety." *Id*. (citation omitted). Those two requirements—a sufficiently serious condition and culpable state of mind—are often referred to as the "objective" and "subjective" elements required for stating a plausible Eighth Amendment claim. *See, e.g., Brock v. Wright*, 315 F.3d 158, 162-64 (2d Cir. 2003).

Conditions are objectively serious enough to implicate the Eighth Amendment where, alone or in combination, they produce "deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). The deprivation must be

significant; although the Constitution does not permit "inhumane" prisons, nor does it "mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). There is no bright-line rule or "static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). Additionally, the length of time an inmate is subjected to the condition is relevant in determining whether it is sufficiently serious. *See Rhodes*, 452 U.S. at 373 ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.").

Failure to provide an adequately furnished cell may constitute a sufficiently serious deprivation for purposes of the Eighth Amendment where a plaintiff alleges that the condition contributed to the deprivation of a basic need or caused significant pain. *See, e.g., Bell v. Luna*, 856 F. Supp. 2d 388, 398 (D. Conn. 2012) (failure to replace "useless and unhygienic" mattress constituted Eighth Amendment violation); *Jones v. City of N.Y.*, 2020 U.S. Dist. LEXIS 58735, at *21 (S.D.N.Y. Apr. 2, 2020) (failure to replace mattress that exacerbated chronic underlying conditions sufficiently serious deprivation for purposes of Eighth Amendment); *but see Harrison v. Stovall*, 2013 U.S. Dist. LEXIS 126021, at *7 (W.D. Ark. Aug. 13, 2013) (lack of desk and chair did not constitute Eighth Amendment violation where plaintiff did not allege that he "suffered any injuries or that his health was impaired in any way by the lack of a desk and chair in his cell").

Allegations that establish a sufficiently serious condition, however, are not enough—a plaintiff must additionally set forth facts showing that an official was aware of the objectionable condition and, despite that knowledge, failed to take corrective action. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837 (1994). Deliberate indifference is more than mere negligence; however, a prison official need not "desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices." *Salahuddin*, 467 F.3d at 280. Although actual awareness of the risk posed by an objectionable condition is ultimately required, at the pleading stage, "a plaintiff need only allege…that a defendant had knowledge of the risks faced by the plaintiff; such knowledge may be alleged generally." *Bell*, 856 F. Supp. 2d at 399.

Here, Henderson contends that his lack of access to a desk while confined in cell F-106 and to a chair and desk while confined in cell F-210 forced him to write in uncomfortable positions that exacerbated his underlying conditions. Compl. Doc. No. 1 at 20 ¶¶ 35-36 He alleges that Warden Hannah knew or should have known that the lack of a desk and chair would force Henderson to either bend over the desk or write on his hands and knees on the floor. *Id.* Henderson attaches as an exhibit a copy of a request form submitted to Unit Manager Hurdle on October 23, 2019 explaining that the lack of a desk in cell F-106 had exacerbated his back pain and requesting that he be provided with a desk. *See* Pl.'s Ex. 1 Doc. No. 16. Although Henderson alleges that he received no adequate response to that complaint, he attaches to the complaint a copy of an "Inmate Administrative Remedy Form" submitted on October 29, 2019 repeating the request for a desk. *See* Compl. Doc. No. 1 at 8 ¶ 5; Pl.'s Ex. 21 Doc. No. 14-4. At the bottom of

that form is a response from Warden Hannah stating "[a] desk was already provided to you on 10/23/19."[3] *Id.*

Henderson has failed to plausibly allege that Warden Hannah was deliberately indifferent to an unconstitutional condition of confinement with regard to the lack of access to a desk in cell F-106. Although Henderson has alleged that the denial of access to a desk exacerbated his chronic conditions and caused him significant pain, he does not contest Warden Hannah's reply stating that he was provided a desk on October 23, 2019. Accordingly, even if Henderson can establish that the lack of access to a desk was a sufficiently serious deprivation for purposes of the Eighth Amendment, it appears that Warden Hannah responded to his requests by providing him with a desk on October 23, immediately following his request to Unit Manager Hurdle.

Moreover, although it is not clear when Henderson was transferred to cell F-210, he does not allege that he filed an inmate request or made a complaint to Warden Hannah regarding the lack of a chair or desk in the seven days during which he was confined in that cell; rather, he states that Warden Hannah knew or should have known that "not placing chairs or desks in Cell F-210 would force the plaintiff to use the cell floor as a desk." Compl. Doc. No. 1 at 21 ¶ 33. He additionally cites to Administrative Directive 9.4(4)(a), which provides that "[h]ousing areas for inmates on restrictive housing status shall be…furnished in a manner consistent with cells in general population." Conn. Admin. Dir. 9.4(4)(a) *available at* https://portal.ct.gov/DOC/AD/AD-

---

[3] In his appeal to Warden Hannah's response, Henderson indicates that the response is inadequate because it fails to address the medical problems caused by the lack of access to a desk or chair. *See* Pl.'s Ex. 21 Doc. No. 14-4. However, Henderson's requests for medical care are addressed to medical care providers, and he does not allege that Warden Hannah was involved in the failure to adequately treat the medical conditions exacerbated by a lack of access to desk or chair; rather, he alleges that she should have ensured that each of his cells in the restrictive housing unit was equipped with a desk and chair.

Chapter-9. Henderson contends that those directives additionally provided notice to Warden Hannah that denial of access to chairs and desks in Unit F was unconstitutional.

Henderson has not set forth facts to support the claim that Warden Hannah was aware that he did not have access to a desk or chair in cell F-210, much less that she was subjectively aware that lack of access to a desk and chair would lead to a worsening of his underlying medical conditions. The general provisions of the administrative directives mandating that restrictive housing units should be furnished comparably to cells in the rest of the prison similarly do not evidence subjective knowledge of that risk. Because Henderson has failed to plausibly allege that Warden Hannah knew of and disregarded an "excessive risk to inmate health or safety" with regard to his initial lack of access to a desk while confined in cell F-106 and lack of access to a desk and chair while confined in cell F-210, he has failed to state a claim under the Eighth Amendment. *Farmer*, 511 U.S. at 837. The claim against Warden Hannah is dismissed under 28 U.S.C. § 1915A(b)(1).

     2.    <u>Serious Medical Need</u>

The Eighth Amendment's prohibition on cruel and unusual punishment has additionally been interpreted to forbid deliberate indifference to an incarcerated individual's serious medical need by medical providers and prison officials. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"). To plausibly allege denial of adequate medical care in violation of the Eighth Amendment, a plaintiff must allege the existence of a "sufficiently serious" medical need and additionally that in delaying or denying

care for that need, the charged official acted with a sufficiently culpable mental state." *Salahuddin,* 467 F.3d at 279-80.

To determine whether a plaintiff has alleged a "sufficiently serious" medical need, courts in this circuit have considered a variety of factors, including whether "a reasonable doctor or patient would find [it] important and worthy of comment or treatment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal citations omitted). There is, however, no "settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Rather, determination of whether a particular need is sufficiently serious entails a fact-specific inquiry including consideration of the extent to which the condition at issue may worsen without adequate treatment and the level of pain or discomfort that it produces. *Id.* at 163.

In addition to establishing that the particular condition at issue is sufficiently serious, a plaintiff must additionally allege that a defendant was deliberately indifferent to that serious need, or "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280. In the context of "medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with….subjective recklessness." *Id.* Mere negligence or medical malpractice, however, does not rise to the level of an Eighth Amendment violation. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

Henderson alleges that he suffers from a variety of chronic painful conditions, including sciatica pain due to osteoarthritis of his lumbar spine and left shoulder joint, medial compartment osteoarthritis of the right knee, and a torn rotator cuff in his right shoulder. He additionally submits medical records documenting those conditions. *See* Pl.'s Ex. 2(a) Doc. No. 16; 8(d) Doc. No. 13. For purposes of initial review, those allegations are sufficient to establish the existence of a serious medical need. Because Henderson brings different claims against each defendant, I will consider the claims separately for purposes of determining whether Henderson has plausibly alleged that each individual defendant was deliberately indifferent to that serious medical need in violation of the Eighth Amendment.

   i. <u>Dr. Valletta</u>

Henderson alleges that Dr. Valletta was deliberately indifferent by reducing his prescribed dosage of Gabapentin without first conducting a physical examination and properly diagnosing him. Henderson additionally attaches as exhibits an inmate request submitted on October 14, 2019 seeking to have his Gabapentin dosage increased as a result of increased pain due to the lack of a desk; notes from Dr. Valletta from October 17, 2019 reporting that Henderson's Gabapentin dosage was reduced; an inmate administrative remedy request submitted by Henderson on October 19 alleging that the failure to examine him prior to reducing his pain medication constituted deliberate indifference; and multiple appeals of that administrative remedy requesting that additional physicians be assigned to Garner. *See* Ex. 5 Doc. No. 16; Ex. 8(e) Doc. No. 15; Ex. 14 Doc. No. 14-1. At the bottom of the administrative remedy form submitted on October 19 is a reply from Coordinator Nadeau stating that she had discussed the reduction in medication with Henderson and that he had indicated that he was "satisfied" with the adjustment. Ex. 14 Doc. No. 14-1.

It is not clear from the complaint or the doctor's notes why Dr. Valletta made the choice to reduce Henderson's pain medication despite his complaints of worsening pain and requests for an increase in the dosage. Although "mere disagreement over the proper treatment does not create a constitutional claim" for purposes of the Eighth Amendment, Henderson has alleged not only that he disagreed with Dr. Valletta's decision but that the treatment provided was inadequate and led him to experience to significant pain. *Chance*, 143 F.3d at 703; Compl. at 12 ¶ 15. Henderson does not, however, allege that he subsequently informed Dr. Valletta that his pain had increased as a result of the reduction in Gabapentin. Nor does he address the reply to his administrative remedy noting that he had told a nurse he was "satisfied" with the dosage. Pl.'s Ex. 14 Doc. No. 14-1. Although he filed numerous health service reviews, requests and grievances regarding Dr. Valletta's failure to examine him prior to adjusting the medication, those complaints do not seek to have his dosage adjusted or request alternate medical care; rather, the remedy requested is that additional physicians be assigned to Garner. *See* Ex. 14 Doc. No. 14-1. Accordingly, Henderson has alleged only that Dr. Valletta chose to reduce his medication without first examining him. Without additional facts indicating that Dr. Valletta was aware that the reduction in dosage caused Henderson to experience continued pain and yet failed to provide additional treatment, Henderson has not plausibly alleged that Dr. Valletta "knew of and disregarded [Henderson's] serious medical needs." *Chance*, 143 F.3d at 703. The Eighth Amendment claim asserted against Dr. Valletta is dismissed. *See* 28 U.S.C. § 1915A(b)(1). To the extent that Henderson possesses additional facts regarding Dr. Valletta's awareness of his ongoing pain and failure to provide adequate treatment, he may amend the complaint to assert those allegations.

ii.   Director Maurer, Chief Medical Officer Kennedy and Chief Operating Officer Richeson

17

Henderson alleges that the inadequate treatment he received from Dr. Valletta occurred because there were not enough medical providers at Garner to provide medical care to the nearly 700 inmates confined there. He attaches to the complaint copies of inmate request forms addressed to Director Maurer and Officers Kennedy and Richeson informing them that there were not enough medical providers assigned to Garner; as a result, Dr. Valletta had not examined or diagnosed him in person and had incorrectly reduced his medication, causing him to experience continuing pain. *See* Pl.'s Exs. 10(a)-(d) Doc. Nos. 16, 14-2. Based on those request forms, Henderson contends that Director Maurer and Officers Kennedy and Richeson knew or should have known that Garner was inadequately staffed with medical care providers and were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to intervene.

Henderson relies solely on Dr. Valletta's failure to examine him prior to adjusting his Gabapentin to support the claim that there were not enough medical providers at Garner. Although it is not clear why Dr. Valletta failed to properly examine Henderson, Henderson sets forth no facts to establish a connection between the inadequate treatment received from Dr. Valletta and a lack of sufficient medical providers at Garner. Moreover, he also does not allege that he was unable on other occasions to obtain timely or adequate medical care or that care was delayed.[4] Accordingly, although Henderson has alleged that he made Director Maurer and Officers Kennedy and Richeson aware of Dr. Valletta's failure to conduct an examination or

---

[4] Henderson additionally submits as exhibits requests from other correctional facilities—MacDougall-Walker, Corrigan-Radgowski and Cheshire—requesting to be seen by a doctor or receive an appointment with an orthopedist. To the extent that Henderson seeks to bring claims regarding a denial of access to medical treatment at those facilities, those claims must be raised in a separate action. *See* Fed. R. Civ. P. 20(a)(2) (defendants may be joined in an action only if any right to relief is asserted against them arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action).

properly diagnose him through requests and reviews, mere notice that Henderson had not been

seen in person does not establish that the defendants were aware of a shortage of medical

providers. Henderson has therefore not adequately alleged that those defendants knew of and

disregarded "an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837. The Eighth

Amendment claims asserted against Director Maurer, Chief Medical Officer Kennedy, Chief

Operating Officer Richeson are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

iii.    <u>Coordinator Nadeau and Supervisor Desena</u>

Henderson additionally contends that Coordinator Nadeau and Supervisor Desena were

deliberately indifferent to his serious medical needs by failing to ensure that his sick-call

requests, health service reviews and grievances were properly collected and evaluated in the

manner provided by the Connecticut Administrative Directives. He alleges that he notified

Supervisor Desena that Coordinator Nadeau was failing to ensure that his sick call requests and

health service reviews were being collected from the collection boxes as required by

Administrative Directive 8.9, and that as a result of that failure, he was being denied timely,

adequate medical treatment. Compl. Doc. No. 1 at 14 ¶ 23; Pl.'s Ex. 11(a) Doc. No. 14-2.

Despite those requests, the problem was not corrected. *See id.* at 15 ¶ 26; *see also* Pl.'s Exs.

13(a)-(b) Doc. No. 14-1, 11(b), 12 Doc. No. 14-2, 19 Doc. No 14-1.

Although Henderson alleges that both Supervisor Desena and Coordinator Nadeau

violated procedures mandated by the Connecticut Administrative Directives for processing

inmate health service requests and grievances, those violations alone do not implicate the Eighth

Amendment. "It is well established…that inmate grievances procedures are undertaken

voluntarily by the states, that they are not constitutionally required, and accordingly that a failure

to process, investigate or respond to a prisoner's grievances does not in itself give rise to a

constitutional claim." *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445-46 (W.D.N.Y. 2008)

(collecting cases). Because Henderson cannot rely on allegations that the defendants violated the

Administrative Directives to establish an Eighth Amendment violation, he must allege that the

failure to follow those directives resulted in denial of access to adequate medical care. Although

Henderson submits as exhibits a request addressed to Supervisor Desena and one addressed to

Director Maurer from October 18, 2019 stating that the failure to collect sick-call requests has

prevented him from being seen by a medical provider, there is a reply at the bottom of each

request noting that Henderson was seen by an RN later that same day. *Id. See* Pl.'s Ex. 11(a)

Doc. No. 14-2; Pl.'s Ex. 10(a) Doc. No. 16. Accordingly, Henderson has not sufficiently linked

the failure to process his sick-call requests to inadequate or delayed access to treatment.

Moreover, Henderson seeks to hold both Coordinator Nadeau and Supervisor Desena

liable in their role as supervisors, alleging that both were ultimately responsible for ensuring that

inmate requests were adequately collected and processed. The Second Circuit recently clarified

the requirements for adequately pleading a section 1983 claim under a theory of supervisory

liability, holding that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a

plaintiff must plead and prove that each Government-official defendant, through the official's

own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618

(2d Cir. 2020) (citation omitted). Accordingly, in order to hold the defendants liable under the

Eighth Amendment, Henderson must allege that each official was actually aware of a substantial

risk of serious harm to his health or safety and failed to take action. Here, Henderson has merely

alleged that both officials were aware that the requests and reviews were not being properly

collected and failed to take corrective action. Those allegations are insufficient to establish

personal participation in denial of access to adequate medical care. Accordingly, the Eighth

Amendment claim arising from the improper processing of Henderson's requests, reviews and grievances by Supervisor Desena and Coordinator Nadeau are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### IV.   Conclusion

Henderson's motions for exhibit verification [Doc. Nos. 17, 18, 19, 21] are granted. The Eighth Amendment claims asserted against Dr. Valleta, Warden Hannah, Director Maurer, Officer Kennedy, Officer Richeson, Coordinator Nadeau and Supervisor Desena are **dismissed.** To the extent that Henderson possesses additional facts regarding Dr. Valletta's knowledge of worsening or continued pain following the reduction in his Gabapentin dosage and failed to provide treatment, he may amend the complaint to assert those allegations. Any Amended Complaint shall be filed through the Prison Efiling Program within thirty (30) days from the date of this order.


SO ORDERED.

Dated at Bridgeport, Connecticut, this 21st day of April 2021.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge